Thank you, Judge. Whenever you're ready. Thank you. May it please the Court, my name is Danielle Nerone-Riley and I am the attorney for Ronnie Robinson in this matter. Mr. Robinson is appealing the decision in order of the district court or in the lower court refused to suppress the items that were unlawfully seized in this matter. Mr. Robinson's contending that there in fact is a violation of his constitutional rights to be secure in his person, places, and things, and that they unlawfully went to the residence of his girlfriend and unlawfully conducted a search of that residence. He was an overnight guest. He had the expectation of privacy in there, and thereafter, when he did not give the police officers what they wanted, when they wanted it, they did a retaliatory search wherein they searched the entirety of his girlfriend's residence. Let me just ask you, the government cites his conditions of release, one of which allowed the probation officer to visit him at any time at home or elsewhere, and then they cite one related to the searches which says that he shall submit his person and then any property, house, residence, vehicle, papers, etc. without reference to his house. What's your response to that? So in this situation, Judge, what happens is there is that release condition. He is allowed to, they are allowed to visit him wherever, right? We don't contest that. However, when the police officers or probation officers knock on his door and his girlfriend says, hey, I'm going to go get him out of bed, why are they entering into the residence? Why are they going in there? Why are they thereafter allowing others in? Well, the roommates at the place where he was approved to live say that they hadn't seen him for a while before Thanksgiving, and he soon confirmed that he was spending two nights or so away a week, and this was a place that he had been living before he was required to move. So it wasn't reasonable for them to think that he was, in effect, residing there at least part of the time so as to, with reasonable suspicion, authorize a search. So I'll move from the answer then over to this answer. Sorry. No, no, no. Because, see, the fact that they went to that first address I think is very telling in this matter because that's, they knew where he was living. They knew he was residing just because that's where they had been advised that that was his residence at the time. Correct. But if the fact that you are, have a designated residence doesn't necessarily mean that you're spending, you're living there, and the nature of the conditions still were that he was entitled, he was subject to being visited at any place and visited any home or elsewhere. So he kind of traveled with him. He was allowed to be visited, but that doesn't mean they're allowed to just carte blanche, go ahead and search wherever they want, however they want, if there's no reasonable suspicion that evidence of any criminality would be found. So let me just, I know you have issues about the entry into that particular residence, but putting that aside for a moment, once they're in there, you would agree his rights shouldn't be greater than they would be if it was his own home. At that point, if they're in properly, into that house properly, they only need his reasonable suspicion at that point to search his phone and to search the home. But where is the reasonable suspicion? Where is it? The government, in terms of his violations of release, he's not supposed to associate with people engaged in criminal activity. He communicated with Mr. Walker, who was a suspect in a murder with a prior felony conviction. He didn't notify them about his contact by law enforcement. There are other ones as well. The government has the district court. They'd seen the drug use stole at the registered residence. His girlfriend said there was marijuana in the home. So again, if the court looks at the fact that they go to the initial residence where he is, all of his clothes are there, all of his belongings are there, all of his mail comes there. That's where he's right-sided. Did you refer to it as an initial residence? Because it is possible to have more than one residence. Maybe one domicile. But he can be a resident of his girlfriend's place, which he had been at that time, even though his permanent home was supposed to be somewhere else. He didn't even have a key to that residence. Nobody knew he was going to be at that residence. And the fact that he spends the night at a girlfriend's house with no other belongings there, does that mean that that's his residence? But what if it's three? Are you saying there can be only one residence and that's the place you get your mail? And even if he were living all the time at his girlfriend's house, the fact that he didn't have a key and mail ends the question? No, I'm not saying that at all. What I'm saying is that there was no evidence whatsoever that he resided there, other than he spent the night there once or twice a week. Had these officers, I mean, again, what this court is missing is that he, these officers traveled up over three hours, New York State police officers traveled up over three hours to talk to him about an unrelated homicide. There is no condition in his record or in his conditions that says, I have to cooperate with every law enforcement investigation out there. What this court will do to open up this, the can of worms would be anytime somebody knows something, all they have to do is go in there and question him with his probation officer. Even if that was one of the reasons they wanted to speak to him about that, if he, in fact, it was reasonable suspicion that they violated numerous conditions of his release in terms of who he's associating with, who he was communicating with, marijuana use, that's a sufficient basis for them to search under his condition. They may have other reasons because they think they're investigating this murder, but that doesn't mean that you can discard all the other grounds that they have for doing the search. So is it the court's position that if there's a technical violation such as he's associating with someone, that gives him carte blanche to search his girlfriend's kids' room, his girlfriend's brother's room? I don't consider it a technical violation. I don't consider these technical violations to be associating with felons, to be communicating, you know, to a suspect in a murder who is a felon using, you know, drug use. To me, those are violations that have authorized a search. I can read you the condition. It doesn't say for certain violations, reasonable suspicion of serious violations, that you can search his phone or his home. But that's not why they were searching his home or his phone. They didn't even know about the drug, alleged drug use of the Runts until the New York State police were in his phone pursuant to the parole or parole officer, probation officer, directing that he had to give the code. I mean, had, I mean, Judge, just take it this step further. As he's sitting at his table, they said, hey, do you want to go somewhere else and talk about this? Had they all left with him, they would have no reason whatsoever to go back into that residence and search it. They found out about the drugs. They knew about Walker. They knew about all of that. And nobody was going to search the residence. It was only until Mr. Robinson wasn't cooperative that they said, okay. And that's what this Court has to determine. It's a violation of its Fourth Amendment constitutional rights. And that's why we're asking that the Court suppress this evidence. Let me ask you about the initial entry into the home, what the district court found, among other things, that there was implicit consent. There was a hearing. The officers testified that they asked to come in and that they were allowed in without objection. So why isn't that, we have to find that that's a clearly erroneous, factual ruling by a judge who had an evidentiary hearing. So why isn't that an additional grounds for them, apart from the condition allowing them to visit him anywhere, another grounds for them to enter the home? They went into the home with, it's not implicit consent. She said, I will go get Mr. Robinson. She goes back, and that's being Kimberly Varela, goes back to get Mr. Robinson. Why can't they do a home visit outside? Why can't they go elsewhere? And even if you say, okay, the probation officers are there, allowed in, and they're at the table talking to Mr. Robinson, what permission or authority do they have to then open the door for law enforcement to come in? They don't. This is, this is a. Wasn't there a factual dispute about whether they opened the door, whether she shut the door, whether it was left open, and the judge made a finding fact that it was not shut. They did not open it. They walked in. Don't we have to find that was clearly erroneous? I agree. As it, as it pertains to the parole officer, the probation officer, Deo and Levine, but they thereafter opened the door for the law enforcement to come in. Where do they have that right? Where do they allow other individuals to come in for a subsequent search? I don't understand that argument. So if someone lets officers into the home by consent, if there's an officer outside in the car, two officers are already in, they have to ask her, can a third officer come in? We have no case law that suggests you have to get consent for each individual law enforcement officer to enter the home. No, but probation has the right to be in there. Members of the New York State Police who traveled up three hours from New York State don't get to just use probate. It's almost like the reverse stalking horse. It's almost like they're going to then say, since probation's in there, we can go in there. We have the right to search. No, I mean, and that's why this case is so frustrating. And I, and I understand, I appreciate what the Court's asking, going down that, I understand what you're saying, but there's no evidence before this Court that Walker had a criminal history. And I disregard, I disagree with the Court's position with regards to the victim being someone who had a criminal history. He was a victim, and my client was friends with him. That was Avery Miller. These officers, had he just cooperated in the investigation, there would have been no search. This is a harassing search, which the Fourth Amendment does not allow. All right. All right. Thank you, Ms. Riley. Thank you. Thank you, Judge. Okay. We'll hear from the government. Mr. Sutcliffe. Good morning. May it please the Court. Thomas Sutcliffe on behalf of the United States. Your Honors, I'll begin, if I may, with the issue of whether the defendant was a resident of the Aiken Avenue apartment. First of all, whether he is a resident is not so much the issue. It's whether investigators had a reasonable suspicion to believe that he may have been. And that's judged from the time at which they make the entry. So whether or not mail was found in the apartment, whether or not his clothing or any other items were found in the apartment really doesn't bear into that analysis. And based on the information that probation officers had before they made the initial entry, it was reasonable to infer that at the very least, the Aiken Avenue apartment was one of the places where he was staying. Can I just ask you, and you have this in your brief, there seems to be a circuit split on what level of proof they would need before they would enter in this type of situation. There seems to be ninth circuit authority to the extent that you need probable cause. And I want you to comment on that. What is the standard for getting into, a probation officer getting into a third party's home before you have to show? Your Honor, first we would submit that whether or not he's a resident isn't even an issue. Because there's a fundamental standing problem that I think the adverse circuits ignore. So the ability to search him shouldn't be contingent on him being a resident or not. Because ultimately, even if there's a violation of a third party's rights, the only constitutional harm is potentially in this instance a violation of the girlfriend's rights. The Supreme Court has said as an overnight guest you have a right, even as an overnight guest in someone else's house, that you can assert a Fourth Amendment right. Yes, but that's only so much of a right as he would have had in his own residence. So his own residence, his own residence, he needed, you would have needed, they would have needed reasonable suspicion in his own residence. Correct. So the argument would be he would have standing to assert that whether or not they had reasonable suspicion to get into that home, right? I agree, Your Honor. You're suggesting they don't need any suspicion, that he has no standing, he can't challenge this. I'm suggesting to you that would put him in a worse position than he would be if it was his own home, because the condition says they have to have reasonable suspicion to do that in his own home. Your Honor, I apologize. I don't mean to imply that they didn't have to have reasonable suspicion. What I'm suggesting is no standing. So that means they don't need reasonable suspicion. If he has no standing, they don't need any suspicion. He can't assert a Fourth Amendment right. I'm suggesting to you he can assert a Fourth Amendment right, even as an overnight guest. It's only limited to the extent that as part of his conditions, he's subject to something less than that, which would be, in this case, reasonable suspicion, wouldn't it? No, I agree, Your Honor. What I'm suggesting is there's no reasonable suspicion that he has to be a resident of the place that they're searching. So let's assume he was only an overnight guest. Let's assume there was no indication that that was actually his domicile. I don't think that there has to be any showing here that he was a resident versus an overnight guest, because to do that would be to create a requirement. It would allow him to piggyback on the rights of his girlfriend in that instance. But there needs to be at least reasonable suspicion. If he's in someone else's home to search his phone, to search the home that he's in overnight, there has to be reasonable suspicion, if I would agree with that. Yes, there has to be reasonable suspicion of either a violation of the conditions of his release or new criminal conduct, to spell that. Over there. Yes, I'm sorry. Ms. Riley's, that's okay. Ms. Riley's, you heard her argument, is that this was all pretextual and that it was just, to the extent there was reasonable suspicion, I think she could contest there wasn't even reasonable suspicion, that it was just on technical violations and that this was all a ruse because they wanted him to cooperate. What's your response to that? So first of all, Your Honor, just to be clear, it's the extent that the probation officers were coordinating with law enforcement to the extent that they were executing the search, even at the request of law enforcement, under this Court's decision in the United States v. Reyes, that is appropriate. They're allowed to do it even if the only reason is to provide access to law enforcement personnel, because as this Court explained in Reyes, inevitably, the investigative interests of a probation officer and law enforcement are going to be inevitably parallel. Now, as for whether this was just done in retaliation for his not providing more information to law enforcement officers, there is no evidence to that effect here. What Officer Levine testified during the suppression hearing was that the reason he conducted the subsequent search of the apartment was because he had reasonable suspicion of wrongdoing. But there were all these other folks who showed up from different law enforcement authorities. I mean, they weren't really expecting to find evidence related to the murder there. I mean, there does seem to be a harassing element of the way this was conducted at his girlfriend's place when they knew that his address was elsewhere and he had things at the Fifth Avenue residence. And then you have a whole, you know, crew of people who arrive and take over his girlfriend's house. Why was that reasonably related to their, you know, any need to conduct, to make sure he was abiding by the supervisory lease terms? Well, Your Honor, if they had reasonable suspicion, which they did here, that he was staying at this apartment illicitly in violation of his probation officer's permission. So the probation officer can go in and see. But why does the New York State police have to show up then, other than to harass? Well, Your Honor, this Court has made clear in the Rays' decision is, if permissible for probation to bring other law enforcement incidents as part of a home visit, they can be on site. They can assist with a search. In fact — But the Rays is not unbounded. I mean, they couldn't have a crew still of 15 people show up where there's no reasonable basis to invade this other — the girlfriend's house. Well, but the special condition — or the standard condition here expressly states that probation can ask for assistance from law enforcement to assist — Were they all assisting? I'm sorry? Were they all assisting? I mean, what are the boundaries? If 15 State police and the local police had shown up as well, that would be okay? I think it is, Your Honor, precisely because probation is allowed to draw from law enforcement to assist with a search. While law enforcement there, there's something that prohibits them from asking about the defendant's knowledge of a murder. And Your Honor, his knowledge of a murder is relevant to the probation officer here because it implicates other potential violations of the conditions of his release. I'll further note that the presence of additional law enforcement officers here, even if we were to assume it's improper, it doesn't contribute — it doesn't cause any further violation of the Fourth Amendment rights. Probation would have gathered the same reasonable suspicion it had even if they were not present, which would have justified a further search of the apartment. So I don't think it causes any additional constitutional harm here. With respect to it being the girlfriend's apartment, I just want to emphasize that, again, to the extent that there's a harm here by virtue of this not being his home, the only person who's suffering that harm is the girlfriend. And the defendant has still yet to articulate any basis for why he should be able to vicariously assert his Fourth — her Fourth Amendment rights. Indeed, to allow him to do that here would have the perverse effect of essentially rewarding him for violating his probation officer's express instruction. Does she have a 1983 action against the officers who were there if they were there to harass and not on the basis of anything she had done? It's conceivable, Your Honor. But at the outset, he wouldn't have standing to assert that. And secondly, I think the Court should also keep in mind that the girlfriend here was aware that the person she was letting into her home, apparently two — at least two times per week, was on supervised release. And she had previously been warned by probation the previous — We don't have to reach those things unless — because the district court found she consented to them to enter the home, we don't have to reach that issue unless we overturn that finding, right? That would be a lawful basis for them to enter the home. That would, Your Honor, yes. And then they would just need, at that point, reasonable suspicion under his condition to search his phone and to search the resident that he's occupying at that time, correct? That's correct, Your Honor. I mean, to be clear, she does not consent to the subsequent search. She expressly states no. So the consent theory — That's a different issue in terms of what his rights, he agrees, under his condition, that they just need reasonable suspicion to search, right? Exactly, Your Honor. Yes, that's correct. Your Honors — I have a question about the condition as a whole, and this is, I guess, kind of a side issue, but I'm just curious about this because I was — this is a standard condition of supervised release. My understanding is that a search condition is a special condition of supervised release, that it's not imposed as a standard condition in every single case. I'm just confused by that. Why is a search condition under the standard conditions of supervision? Your Honor, at the time — this is no longer the Northern District of New York's practice. At the time, pursuant to a general order that was promulgated in 2016, it was the — the Northern District kept it in a general order, and it was the practice of the Northern District not to orally pronounce it at the time, but rather to refer to that general order. This has prompted some more recent litigation as a result of that. This Court, I think in several sua sponte orders, has asked parties to brief the validity of that condition. But as far as how it relates to this case, we would submit, because the defendant never appealed that condition in his first criminal case, the law of the case doctrine bars him — Well, this is the second issue, though. With respect to the language of it, it says it shall submit his or her person and any property, house, residence, vehicle, papers, computer. It seems to me, in your brief, you're taking the position that the way that's worded, that means he's agreeing to submit to anybody in the world's property, computer, vehicle, as part of his condition. And I've never seen a condition like that. Is that the government's position, if that's what this means, that he's agreeing they can search any family member, whether it's in his house or not, they can go search a family member's computer under this condition? Is that the government's position? Your Honor, I don't think this — I don't think the language here — It's usually his person, his computer, his house, right? That's correct, Your Honor. And I don't think this judgment overrides the rights of third parties. Probation still — a judgment only affects the defendant's rights here. It doesn't allow probation to violate other people's privacy rights. But what it does make clear here is that, at the very least, if probation does search a third party's property, at the very least, he has no reasonable expectation of privacy, because that's made clear that he has no standing to assert somebody else's privacy interests in the event that, like in a case like this one, they do wind up searching property that conceivably belongs to somebody else. All right. Thank you. Thank you both. We'll reserve the seat. Have a good day.